IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**LAURA M.,**[1]

       Plaintiff,                                Civ. No. 3:18-cv-01674-CL

                         v.                              **ORDER**

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.

_____

MARK D. CLARKE, Magistrate Judge.

      Plaintiff Laura M. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration pursuant to 42 U.S.C. 405(g) and 1383(c)(3), denying her claim

for benefits.  For the reasons below, the Commissioner's decision is REVERSED and

REMANDED for further proceedings.

///

---

[1]In the interest of privacy, this Order uses only the first name and the initial of the last name of
the non-governmental party or parties in this case.

# BACKGROUND[2]

Plaintiff is a fifty-two-year-old woman who worked as a receptionist and briefly as a Costco food demonstrator. Tr. 48, 50.  She left her job at Costco because pain prevented her from standing for long periods of time, and in April 2015 she was laid off from her job as a receptionist. Tr. 42, 50, 471.

Plaintiff has a long history of back, abdominal, and leg pain, and struggles with mental impairments including depression and anxiety.  In January 2015, Plaintiff began treatment with Dr. Joshua Gepner, who served as her primary care physician. Tr. 377.  Dr. Gepner initially treated Plaintiff for right upper quadrant pain associated with gallstones, back pain, and hip pain. *Id*.  He diagnosed Plaintiff with cholelithiasis, right hip joint pain, and low back pain. Tr. 378-79. Dr. Gepner also prescribed medications for Plaintiff's mental impairments, which included depression and anxiety. Tr. 384.

Plaintiff continued to experience various physical and mental symptoms over the course of her treatment with Dr. Gepner from January 2015 through April 2017.  During examinations Dr. Gepner noted that Plaintiff experienced abdominal pain, hip pain, gallbladder pain, nausea, vomiting, anxiety, depression, and difficulty with sleep. Tr. 384-99, 414-16, 420-25, 435-39, 527-32, 657-58, 661, 682-84, 728-31, 745-47, 760-63, 769-771, 791-93, 798-806.  Plaintiff was treated with numerous medications, including morphine. Tr. 415, 421

With respect to Plaintiff's abdominal pain, on December 23, 2014, Plaintiff received an ultrasound which showed she had two gallbladder stones. Tr. 564.  On December 8, 2015, she presented to the Emergency Department because of severe abdominal pain, chest pain, and nausea. Tr. 440, 663.  After Plaintiff took her normal morphine prescription, she reported that her

---

[2] The following recitation constitutes a summary of the pertinent evidence within the Administrative Record and does not reflect any independent finding of fact by the Court. Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 12.

pain symptoms improved and she was discharged home with notes to follow-up with Dr. Gepner. Tr. 441, 664.  On May 13, 2016, Plaintiff again presented to the Emergency Department with severe abdominal and leg pain. Tr. 706.  The following day, on May 14, 2016, Plaintiff had surgery to remove her gallbladder. Tr. 503-04, 716-17.  It was noted that Plaintiff had not received gallbladder surgery earlier because her insurance would not pay for it, and she was treating with morphine to address the pain. Tr. 499. Although it was anticipated that Plaintiff's abdominal pain would resolve after her gallbladder surgery, she continued to report abdominal pain after her gallbladder removal, including going to urgent care in August 2016 because of worsening pain in her right upper quadrant. Tr. 764, 769, 775, 779, 787-88, 791-92, 807, 811, 815.  In May 2017, Plaintiff transferred care from Dr. Gepner. Tr. 811.  Her new treating physician recommended tapering Plaintiff's morphine use, which Plaintiff initially refused, but then agreed to do. Tr. 812, 816, 820, 822, 824.

For her leg and back pain, Plaintiff began physical therapy in April 2015. Tr. 400-02.  In May 2015, physical therapy notes show that Plaintiff was being noncompliant in her home exercise program. Tr. 417-18.  Over the next year, Plaintiff continued to complain of back, hip, and leg pain, and on June 22, 2015 and May 2, 2016 she received steroid injections to treat her pain. Tr. 420, 701, 787.  In July 2016, Plaintiff continued to receive physical therapy to address her ongoing back pain. Tr. 752.  During treatment, Plaintiff reported difficulties performing activities of daily living and modified her activities because of her pain. Tr. 772-73, 776.  In September 2016, physical therapy treatment notes show that Plaintiff continued to receive benefit from receiving physical therapy. Tr. 777.

For Plaintiff's mental health impairments, she attended counseling sessions.  In June 2016, Plaintiff began attending counseling with QMHP Sandra Munn to address her history of

mental health impairments, including longstanding depression and anxiety that have existed since she was ten years old. Tr. 641.  Over the course of her treatment, Ms. Munn noted that Plaintiff continued to exhibit anxiety and depression, including difficulties dealing with grief associated with her sister's death and losing her job. Tr. 537-41, 625-44.

## PROCEDURAL BACKGROUND

On November 7, 2015, Plaintiff protectively applied for Disability Insurance Benefits, alleging disability beginning April 20, 2015. Tr. 197-98. The agency denied the claim both initially and upon reconsideration and on June 2, 2016, Plaintiff requested a hearing. Tr. 63-87, 120-21.  On June 9, 2017, prior to the ALJ hearing, the agency issued a revised reconsideration which included an "informal remand." Tr. 87.  Plaintiff appeared for a hearing before ALJ Steve Lynch on October 12, 2017. Tr. 34-62.  On December 14, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 12-33.  Plaintiff requested review of the hearing decision, which the Appeals Council denied in July 2018. Tr. 1-6.  Accordingly, the ALJ's decision became the final decision of the agency from which Plaintiff seeks review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).  "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011).  Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity"? 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a.    The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020.

2. Plaintiff did not engage in substantial gainful activity from the alleged onset date of April 20, 2015.

3. Plaintiff has the following severe impairments: lumbar degenerative disc disease; and abdominal pain with gall bladder removal.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

5. Plaintiff has the RFC to perform light work with the following limitations. The claimant can occasionally climb, stoop, crouch, kneel, and crawl.  She should also avoid unprotected heights and workplace hazards.

6. Plaintiff is capable of performing past relevant work as a receptionist and data entry clerk. (20 C.F.R. 404.1565).

Consequently, the ALJ concluded that Plaintiff is not disabled as defined by the Social Security Act.  Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041).  "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501).  Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted).  Finally, a court may not reverse an ALJ's

decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues:

1. Did the ALJ properly evaluate the opinions of Plaintiff's medical sources?

2. Did the ALJ properly evaluate Plaintiff's subjective pain testimony?

3. Did the ALJ properly assess Plaintiff's residual functional capacity ("RFC") based on the limitations he found at step two?

The Court finds that the ALJ erred in evaluating Plaintiff's medical sources and assessing Plaintiff's RFC based on the limitations he found at step two. The ALJ's decision should be reversed and remanded for reconsideration and reevaluation of the medical opinion evidence and to assess an RFC that properly incorporates Plaintiff's mental limitations found at step two.

## I.     The ALJ improperly evaluated parts of the medical opinion evidence.

Plaintiff challenges the ALJ's weighing of the medical opinion evidence of record. Specifically, she argues the ALJ attached too much weight to the medical opinion of Dr. Marc Stuckey and the non-examining state agency psychologists and physicians, and failed to provide

legally sufficient reasons to discredit the medical opinions of Plaintiff's treating physician, Dr. Joshua Gepner, treating counselor, Ms. Sandra Munn, QMHP, and medical expert, Dr. Wil Nelp. Pl.'s Opening Br. 15-29.

In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* However, an ALJ considers all relevant medical evidence and is responsible for resolving its conflicts. 20 C.F.R. § 404.1527; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). Even where an examining physician's opinion is contradicted by another doctor, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence. *Id.* at 1164; *accord Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

Here, the ALJ weighed the medical opinions of Plaintiff's counselor Ms. Sandra Munn, QMHP, examining doctor, Dr. Marc Stuckey, and the state agency psychological consultants, when evaluating Plaintiff's mental health symptoms at step two. *See* Tr. 18-19. Additionally, the ALJ weighed the medical opinions of Plaintiff's treating physicians, Dr. Joshua Gepner and Dr. Vaibhav Vardhan Maheshwari, the medical expert, Dr. Wil Nelp, and the state agency medical consultants when forming Plaintiff's RFC. *See* Tr. 25-27. Plaintiff takes issue with the ALJ's evaluation of all the medical opinions except that of Dr. Vaibhav Vardhan Maheshwari. The court addresses the ALJ's evaluation of each medical provider in turn.

///

### A.  Ms. Sandra Munn, QMHP

Plaintiff began attending counseling sessions with QMHP Sandra Munn in June 2016 to address her mental health impairments including depression and anxiety. Tr. 641-42.  On December 29, 2016, Ms. Munn completed a Mental Impairment Questionnaire. Tr. 537-45.  In the questionnaire, Ms. Munn noted that Plaintiff was diagnosed with generalized anxiety disorder, major depressive disorder, and posttraumatic stress disorder. Tr. 537.  She noted that Plaintiff's diagnoses caused her to experience poor short-term memory, sleep disturbance, appetite disturbance, recurrent panic attacks, suicidal ideations, decreased energy, and anhedonia and pervasive loss of interest. *Id*.  Ms. Munn further noted that Plaintiff had hyperverbal and repetitive speech, memory impairments, poor insight, had attempted suicide in the past, and experienced panic attacks at least twice a week. Tr. 538.  Based on these findings, Ms. Munn opined that Plaintiff would be absent from work on average, two to three days a week. Tr. 539.

The ALJ gave "no weight" to Ms. Munn's opinion. Tr. 18-19.  First, the ALJ found it was inconsistent with the mental status examinations performed by Plaintiff's primary care provider who the ALJ noted "saw [Plaintiff] more often than Ms. Munn," and had never mentioned Plaintiff being "hyperverbal or tense."  Tr. 19.  Additionally, the ALJ found that there was "no support in the record" of the symptoms Ms. Munn described, particularly the frequent panic attacks. *Id*.  Because qualified mental health providers are defined as "other sources," they are not acceptable medical sources, and are thus entitled to lesser deference. 20 C.F.R. § 404.1513(d) (2013); *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1222 (D. Or. 2015).  The ALJ need only give germane reasons to discount such opinions.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ failed to provider a germane reason to discredit Ms. Munn's opinion. Although Dr. Joshua Gepner's treatment notes do not specifically mention "hyperverbal or tense" speech, he did consistently find that Plaintiff suffered from anxiety and depression, even noting that Plaintiff was experiencing panic attacks and disturbed sleep. *See* Tr. 384-85, 392, 396-97, 420, 423, 425, 528-29, 682, 729, 745-46, 761, 771; *see also Cf.* Tr. 729; *see also* Tr. 745. As for the ALJ's second finding that there was "no support in the record" of the symptoms Ms. Munn described, this is also not supported by substantial evidence in the record. In fact, along with Ms. Munn and Dr. Gepner, Plaintiff was treated by another qualified mental health provider, Ms. Judy Hart, who also noted Plaintiff's anxiety and depression, and wrote that Plaintiff experienced panic attacks in early 2018. *See* Tr. 616. Accordingly, the ALJ failed to provide germane reasons to discredit the opinion of Ms. Munn.

### B. Dr. Marc Stuckey

Dr. Marc Stuckey performed a Psychodiagnostic Interview and mental status examination of Plaintiff on January 25, 2016. Tr. 470-72. In his interview, Dr. Stuckey found that Plaintiff had problems with attention and concentration, had an appropriate affect, and had a logical thought process. Tr. 471. He also noted that Plaintiff "appeared verbally cooperative" and had "appropriate eye contact" and was "adequately groomed, casually dressed, [and] well-nourished." *Id.* Based on testing he found Plaintiff's thought processes "seemed relatively logical and progressive," but did note that she reported having "problems remembering things lately but noted it could be due to medication." *Id.* Dr. Stuckey diagnosed Plaintiff with major depressive disorder, recurrent, unspecified and generalized anxiety disorder and noted that she would be "unable to manage finances if granted." Tr. 472.

The ALJ gave Dr. Stuckey's medical opinion "great weight" finding it was "consistent with the mental status examinations" done by Plaintiff's primary care provider which show Plaintiff's mental health symptoms were "largely controlled with medications." Tr. 19. Plaintiff argues the ALJ "mischaracterized" Dr. Stuckey's report, noting that "[n]either Dr. Stuckey nor Dr. Gepner concluded that Plaintiff's symptoms are 'controlled.'" Pl.'s Opening Br. 18-19. Further, Plaintiff argues that the ALJ's decision to give Dr. Stuckey's medical opinion "great weight" based on this conclusion that Plaintiff's symptoms of depression and anxiety were "controlled" was harmful because the ALJ therefore erroneously "conclu[ded] that Plaintiff has 'mild' cognitive impairment." Pl.'s Opening Br. 19.

As Plaintiff correctly notes, neither Dr. Stuckey, nor Dr. Gepner found Plaintiff's mental symptoms were "largely controlled by medication." *See* Tr. 470-72. Indeed, an independent review of the record shows that although Dr. Gepner noted on May 17, 2016 that Plaintiff's depression and anxiety were improved with medication, only a month later, on June 23, 2016 he wrote that Plaintiff's depression was still "significantly limiting [Plaintiff]," and that he would continue to discuss medication and therapy to address her anxiety. *Cf.* Tr. 729; *see also* Tr. 746. The ALJ mischaracterized the opinion of Dr. Gepner, and subsequently mischaracterized the medical opinion of Dr. Stuckey to support a finding that Plaintiff's impairments were controlled with medication. Therefore, the ALJ erred when evaluating Dr. Stuckey's medical opinion.

### C.  State Agency Psychological Consultants

The state agency psychological consultants found Plaintiff's mental impairments were nonsevere and caused mild limitations in her abilities to maintain concentration, persistence, and pace. Tr. 69, 81. Additionally, they noted normal mental status examinations, independent

activities of daily living, and found that increases in her anxiety were related to situational stressors. Tr. 69, 80.

The ALJ gave the state agency psychological consultants "great weight." Tr. 19.  The ALJ found that they were consistent with the medical record and the medical opinion of Dr. Stuckey, and additionally noted that they "provided support for their opinions." Tr. 19. As noted above, the ALJ improperly evaluated Dr. Stuckey's medical opinion, therefore it was improper for the ALJ to assign "great weight" to the medical opinions of the state agency psychological consultants based on the similarities the ALJ found in their findings and in Dr. Stuckey's medical opinion.  Therefore, the ALJ failed to properly evaluate the medical opinions of the state agency psychological consultants.

**D.  Dr. Joshua Gepner**

Dr. Joshua Gepner was Plaintiff's treating physician from January 2015 until April 2017. On June 23, 2016, Dr. Gepner completed a questionnaire describing Plaintiff's functional limitations. Tr. 527-33.  He noted that he treated Plaintiff for her depression, anxiety, sciatica, mitral valve prolapse, sleep apnea, and surgery recovery. Tr. 528.  Based on his treatment, he opined Plaintiff would have a poor ability to work eight hours a day, forty hours a week, and to maintain a normal work pace. *Id*.  He believed her physical and mental impairments would interfere with her attention and concentration and that her medications also caused memory impairments. Tr. 529-30.  He also noted that Plaintiff experienced leg and back pain which would require her to change positions every two hours and, that she would only be able to stand and walk for about two hours in an eight-hour work day, could sit for about two hours in an eight-hour work day, and could sit or stand for twenty minutes before needing to move positions. Tr. 530.  He wrote that Plaintiff needed the ability to shift at will about every thirty minutes. Tr.

531.  He found Plaintiff could occasionally twist, stoop, bend, crouch, climb stairs, and climb

ladders, and that she could frequently lift less than ten pounds, occasionally lift ten pounds,

rarely lift twenty pounds, and could never lift fifty pounds. *Id.*  Finally, he wrote that Plaintiff

should avoid moderate exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors,

dusts, gases, poor ventilation, and hazards such as machinery and heights, and should avoid

concentrated exposures to noise. Tr. 532.

Dr. Gepner's medical opinion conflicted with the opinions of the state agency

consultants' medical opinions, so the ALJ was required to provide a specific and legitimate

reason to reject Dr. Gepner's medical opinion. *See* Tr. 71-72, 82-83; *see also Garrison v. Colvin*,

759 F.3d 995, 1012, (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)) ("If a treating

or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

reject it by providing specific and legitimate reasons that are supported by substantial evidence.")

Here, the ALJ gave "limited weight" to Dr. Gepner's medical opinion finding it was

"inconsistent with the medical record as a whole including objective studies" and was "largely

inconsistent" with his "examinations of the claimant as recorded in his treatment notes as

previously described in this decision." Tr. 26. Additionally, the ALJ found Dr. Gepner's medical

opinion was inconsistent with Plaintiff's activities of daily living. *Id.*

It is a specific and legitimate reason to discredit a physician's opinion when the opinion

is incongruent to the physician's medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041

(9th Cir. 2008).  However, Plaintiff argues the ALJ's rationale is "too vague to be considered

'specific and legitimate'" noting that the ALJ listed medical evidence regarding Plaintiff's gall

bladder and abdominal pain, but "did not explain which of those findings conflicted with which

portions of Dr. Gepner's opinion, or why." Pl.'s Opening Br. 22-23, relying on *Embrey v.*

*Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).  Indeed, the ALJ concluded that Dr. Gepner's medical opinions were inconsistent with his medical records but failed to describe what specific inconsistencies he found.  *See Embrey*, 849 F.2d at 421-22 noting that "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Here, an independent review of the medical record shows Dr. Gepner's treatment notes consistently document Plaintiff's ongoing complaints of pain symptoms and difficulties with mental limitations. *See* Tr.  377, 384, 388, 391-93, 396-97, 414-15, 420-21, 423-25, 435, 438, 657, 661, 682-83, 745-46, 769, 771, 775, 791.  Therefore, the ALJ failed to explain what inconsistencies he found between Dr. Gepner's conclusions and his medical opinion.

Next, the ALJ discredited Dr. Gepner's medical opinion finding it was inconsistent with Plaintiff's reported activities of daily living. Tr. 26.  Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that provider's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).  Here, however, the ALJ fails to explain how Plaintiff's daily activities contradict Dr. Gepner's findings.  In fact, Dr. Gepner acknowledged Plaintiff's activities of daily living including reports that she was caring for her granddaughter and studying, thus it is reasonable to infer that his findings in the June 2016 questionnaire reflect his knowledge of these activities. *See* Tr. 435, 438, 657, 661.  Additionally, Dr. Gepner noted Plaintiff's pain was worsening and even noted that she might take a break from school because of her pain. *See* Tr. 683.  Therefore, the ALJ failed to provide a specific and legitimate reason supported by substantial evidence to discredit Dr. Gepner's medical opinion.

///

**E.  Dr. Wil Nelp**

Dr. Wil Nelp appeared as a medical expert during the October 12, 2017 ALJ hearing. Tr. 38-46.  He testified that Plaintiff suffered from abdominal discomfort, a stone in her gallbladder, and chronic inflammation consistent with cholecystitis. Tr. 39.  He noted "some musculoskeletal discomfort" and "low back pain with continuous sitting" and found that Plaintiff "needs to move position… from time to time." Tr. 40.  He also noted discomfort in her knee but wrote that she had "no objective serious musculoskeletal restrictions in the medical records; has good range of motion of the joints and has been responsive to pain medication when necessary." Tr. 41.  He found that her mental impairments included anxiety and depression. Tr. 42.

Overall, Dr. Nelp found that Plaintiff could lift up to twenty pounds occasionally, and ten pounds frequently, and could sit for up to six hours during the workday but would require the opportunity to change position in the sitting position. Tr. 44. He found she could stand and walk for up to two hours at a time, could not use ropes or ladders, could occasionally balance, stoop, use ramps, and use stairs, and that she should not crawl, kneel, or crouch. *Id.*  He also determined that her overhead reaching would be limited due to her back, and that she should avoid workplace hazards of all types, and concentrated exposure to environmental factors. *Id*.

The ALJ gave "partial weight" to Dr. Nelp's medical opinion finding that some of Dr. Nelp's limitations on Plaintiff's physical functioning, especially his finding that Plaintiff need to shift at will, were "excessive" and "seem contradictory to his findings" that Plaintiff only has "minor severe impairments." Tr. 26.  As noted above, it is a specific and legitimate reason to discredit a physician's opinion when the opinion is incongruent to the physician's medical records. *Tommasetti*, 533 F.3d at 1041.  Here, the ALJ reasonably assessed Dr. Nelp's medical opinion that Plaintiff's need to shift at will were contradictory to his finding that she only has

minor severe impairments.  Therefore, there is no error in the ALJ's evaluation of Dr. Nelp's medical opinion.

### F.  State Agency Medical Consultants

On February 10, 2016 and April 27, 2016, the state agency medical consultants found Plaintiff could carry twenty pounds occasionally, ten pounds frequently, and that she could stand, walk, and sit about six hours of an eight-hour workday. Tr. 71-72, 82.  On February 10, 2016, they initially found Plaintiff could frequently climb ramps and stairs and could occasionally climb ladders, ropes, and scaffolds. Tr. 71.  Upon reconsideration, on April 27, 2016, they further limited Plaintiff to occasional stopping, kneeling, and crouching. Tr. 83.

The ALJ gave "great weight" to the state agency medical consultants finding that they "provided supportive explanation for their opinions" and that their opinions "are consistent with the medical record of evidence." Tr. 27.  Plaintiff argues the ALJ erred by giving their medical opinions great weight, arguing that they were unable to review more recent medical evidence from Dr. Maheshwari from July 2016 that showed Plaintiff had an "antalgic gait and tenderness over [her] lower spine despite prescription morphine and gabapentin" and that her chronic low back pain was worsened by lifting and prolonged sitting and standing. Pl.'s Opening Br. 28-29, citing Tr. 535-36, 748-50.  This court agrees.  The Ninth Circuit has held that "[a] treating physician's most recent medical report is the most probative." *Lorden v. Apfel*, 162 F.3d 1169 (9th Cir. 1998); citing *Stone v. Heckler,* 761 F.2d 530, 532 (9th Cir.1985) (for the "holding that medical evaluations prepared several months before hearing are not substantial evidence sufficient to rebut more recent conclusions by treating doctor").  Indeed, as Plaintiff notes, Dr. Maheshwari, one of Plaintiff's treating physicians wrote on July 5, 2016 and July 13, 2016 that Plaintiff's back pain was worsened by bending forward, prolonged sitting, standing, and lifting,

and that she exhibited a mildly antalgic gait. *See* Tr. 535-36, 748-50.  The ALJ erred by relying on the state agency consultants' medical opinions instead of the more recent medical opinion provided by Plaintiff's treating physician Dr. Maheshwari.

## II.    The ALJ properly evaluated Plaintiff's subjective complaints.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. *Id.*

In the second stage of the analysis, the ALJ must consider the intensity, persistence, and limiting effects of the alleged symptoms based on the entire record. SSR 16-3p at *7-8.  The ALJ will consider the "[l]ocation, duration, frequency, and intensity of pain or other symptoms" reported by the claimant, any medical sources, and any non-medical sources. *Id.*  The ALJ's decision must contain "specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*  Additionally, the evidence upon which the ALJ relies must be substantial.  *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Holohan*, 246 F.3d at 1208; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991). The ALJ must also "state specifically which symptom testimony" is being rejected and what facts lead to that conclusion. *Smolen v. Charter*, 80 F.3d 1273, 1284 (9th Cir. 2009) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).  In

rejecting claimant's testimony about the severity of her symptoms, the ALJ must give "specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter*, 504 F.3d at 1036).

In this case, the ALJ applied the requisite two-step framework, and although not all of the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony are supported by the record, the ALJ cited at least one specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony.

### A. Conservative Treatment

First, the ALJ found there were "significant inconsistencies" between Plaintiff's alleged physical conditions and the "minimal objective medical findings." Tr. 21-22. Specifically, the ALJ found that other than the two epidural injections, Plaintiff received "rather conservative treatment" for her back pain. Tr. 21. Conservative treatment is a legally sufficient reason to discredit a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). However, the Ninth Circuit has also recognized that epidural shots are likely not "conservative treatment." *See Garrison*, 759 F.3d at 1015 n. 20 (9th Cir. 2014) (where the Ninth Circuit wrote, "we doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.")

Here, as the ALJ himself noted, Plaintiff received epidural shots which he did not consider conservative treatment. Additionally, this court notes that Plaintiff consistently received morphine to treat her pain, and even testified that she was still taking morphine at the time of the hearing. *See* Tr. 46, 52-53, 376, 405-06, 409, 415, 427, 444, 511, 516, 579, 668, 738, 749, 769, 775, 811. This court fails to see how epidural shots and morphine can be considered

"conservative treatment," and therefore finds the ALJ erred by rejecting Plaintiff's subjective

symptom testimony based on allegedly receiving only conservative treatment.

### B.  Activities of Daily Living

Next, the ALJ discredited Plaintiff's subjective symptom testimony finding that her

activities of daily living were inconsistent with her complaints of disabling symptoms and

limitations. Tr. 24.  An ALJ may use a claimant's activities of daily living to determine symptom

allegation credibility in order to (1) illustrate a contradiction in previous testimony, or

(2) demonstrate that the activities meet the threshold for transferable work skills.  *Orn v. Astrue*,

495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ found that Plaintiff's daily activities were "not as limited to the extent one

would expect, given the complaints of disabling symptoms and limitations," and further noted

that Plaintiff has remained "quite active and independent." Tr. 24.  In support his this finding the

ALJ noted that Plaintiff reported painting benches in April 2015, formally adopted her

granddaughter in September 2015, was studying, receiving A's in school, caring for her

granddaughter in November 2015, and was able to attend to her personal hygiene, drive, shop,

cook, use recipes, do dishes, do laundry, sweep, mop, vacuum, and do scrubbing. Tr. 24, citing

Tr. 400, 423, 435, 470-74.

As noted above, although Plaintiff reported her ability to perform these activities of daily

living, she still continuously reported difficulties with pain and mental health limitations to her

treating physician, Dr, Gepner.  Additionally, the Ninth Circuit has recognized that one need not

vegetate in a dark room in order to be eligible for benefits. *Molina*, 674 F.3d at 1112-13 (citing

*Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)) (internal quotation marks omitted).  The

ALJ failed to explain why Plaintiff's abilities to perform these activities contradict her previous

testimony.  Additionally, the ALJ failed to explain how Plaintiff's abilities to perform these activities translated to transferable work skills.  Therefore, the ALJ failed to properly rely on Plaintiff's activities of daily living to discredit her subjective symptom testimony.

### C.  Stopped Working for Reasons Unrelated to Impairments and Receipt of Unemployment Benefits

Finally, the ALJ found that Plaintiff stopped working because of a business-related layoff rather than because of her allegedly disabling impairments. Tr. 24, citing Tr. 396. Additionally, the ALJ noted that Plaintiff continued to look for work until at least October 2016 and received unemployment benefits. Tr. 24.  The ALJ concluded that it was a reasonable inference that Plaintiff's "impairments would not have prevented her from working for over a year after her alleged onset date of disability." *Id*.

The receipt of unemployment benefits is not a clear and convincing reason to discredit a claimant's subjective symptom testimony.  *See* SSR 96–8p; *Carmickle,* 533 F.3d at 1161–62 (holding that when the record does not establish that the claimant held himself out for full-time work, receipt of unemployment benefits is not a basis for discrediting his disability claim). However, the ALJ reasonably rejected Plaintiff's subjective symptom testimony by finding that she stopped working for reasons unrelated to her impairment. *See Tommasetti*, 533 F.3d at 1040 (court held it is a clear and convincing reason to discredit a claimant if claimant's alleged disability is not the reason claimant stopped working.)  Indeed, the record reflects that Plaintiff was laid off from her job for reasons unrelated to her impairment, namely that she was laid off. *See* Tr. 396, 420, 470, 538, 617.  This was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

///

III.    **The ALJ improperly evaluated Plaintiff's RFC.**

The RFC reflects the most an individual can do. 20 C.F.R. § 404.1545.  In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony.  *Id.*; SSR 96-8p, *available at* 1996 WL 374184.

Plaintiff asserts that the ALJ erred when evaluating her RFC by failing to consider her mild limitations in concentration, persistence or pace, and mild limitations in understanding, remembering, or applying information, which the ALJ had noted at step two of the sequential analysis. Pl.'s Opening Br. 9.  Plaintiff cites the Ninth Circuit unpublished opinion of *Hutton v. Astrue*, No. 11-15726 (9th Cir. Dec. 5, 2012), 491 Fed. App'x 850 (unpublished) (citing 20 C.F.R. § 404.1545(a)(2)), to support her argument.  In *Hutton*, the court held it was error for the ALJ to discredit his own step two findings that claimant had mild limitations in concentration, persistence, and pace when determining claimant's RFC. *See Hutton* at 850-51.

Here, at step two the ALJ found Plaintiff's depression and anxiety were nonsevere, but still found that Plaintiff had mild limitation in understanding, remembering, or applying information, and mild limitation in concentrating, persisting, or maintaining pace. *See* Tr. 18-20.  However, after making this finding, the ALJ failed to consider these mild limitations when forming Plaintiff's RFC. *See* Tr. 20-27.  Like *Hutton*, it was an error for the ALJ to not address Plaintiff's limitations in understanding, remembering, or applying information and her limitations in concentrating, persisting, or maintaining pace, after the ALJ made the finding that Plaintiff had mild limitations in these areas.  Therefore, the ALJ erred when evaluating Plaintiff's RFC.

///

# REMAND

Within a court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan,* 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.,* 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding. *Garrison,* 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin,* 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true because the ALJ made a legal error. *Id.* at 408.

Here, the ALJ erred by improperly discounting the medical opinions of Ms. Munn, and Dr. Gepner, and mischaracterizing the medical opinions of Dr. Stuckey, the state agency psychological consultants, and the state agency medical consultants. Additionally, the ALJ failed to consider Plaintiff's mild limitations in concentration, persistence or pace, and mild limitations in

understanding, remembering, or applying information, which the ALJ had noted at step two of

the sequential analysis.  Ms. Munn found Plaintiff had difficulties with concentration and

impairments regarding her memory and believed Plaintiff would be absent from work two to

three times a week due to her impairments. Tr. 538-39.  Dr. Gepner found that Plaintiff's leg and

back pain required her to move throughout the day, and that her medications caused memory

impairments and that these impairments would cause Plaintiff to have a poor ability to work

eight hours a day, forty hours a week. Tr. 528, 530.  Dr. Stuckey noted that Plaintiff had

problems remembering things, and the state agency psychological consultants noted that Plaintiff

had mild limitations in concentration, persistence, and pace. Tr. 69, 81, 471.

Here, the ALJ failed to account for any of Plaintiff's mental limitations in the RFC and

thus in the subsequent questions he propounded to the VE during the hearing. *See* Tr. 58-60.

Additionally, although Plaintiff's attorney asked the VE questions regarding whether a person

who is limited to simple, routine, repetitive work would be able to complete Plaintiff's past

work, to which the VE replied she could not, Plaintiff's RFC was never assessed to determine the

severity of her mental health limitations, and therefore it is unclear whether Plaintiff would be

limited to simple, routine, repetitive work based on her mental health limitations. *See* Tr. 60-61.

Additionally, even if Plaintiff was only limited to simple, routine, repetitive work, it is unclear

whether that limitation, along with the remaining limitations in Plaintiff's RFC, would prevent

Plaintiff from performing other work that exists in significant numbers in the national economy

as the VE was never asked questions about work other than Plaintiff's past relevant work.

Finally, ambiguities exist regarding the severity of Plaintiff's mental health limitations,

particularly because Ms. Munn found Plaintiff's mental limitations would cause Plaintiff to be

absent from work about two to three times a week, while the state agency psychological

consultants only noted mild limitations. Therefore, this court finds there are ambiguities in the record that require a remand for further proceedings to evaluate the medical opinion evidence, to assess Plaintiff's RFC so that it properly accounts for her physical and mental health limitations, and to determine whether work exists in the national economy for someone with Plaintiff's RFC.

## ORDER

Based on the foregoing, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

It is so ORDERED and DATED this 28th day of August, 2020.


/s/ Mark D. Clarke
MARK D. CLARKE
United States Magistrate Judge